AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
APR 02 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                           DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Silver LG G6 "Thinq" cellular phone bearing a SIM card ) Case No.  **19MJ1331**
with the numbers 8901260342917477525F )
at 2255 Niels Bohr Court, San Diego, CA 92154 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attached Affidavit

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attached Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. § 952 and 960 | Importation of Controlled Substances |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Lauritz Austensen, Special Agent
Printed name and title

Sworn to before me and signed in my presence.
Date: 4/1/2019

_____
Judge's signature

City and state: San Diego, California        Honorable Judge Andrew G. Schopler
Printed name and title

# AFFIDAVIT

I, Special Agent Lauritz Austensen, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following:

   a. A black or dark grey Samsung Galaxy J7 cellular phone
   Model: SM-J727T1
   IMEI: 354254/09/509138/0, described in Attachment A-1 (incorporated herein by reference);

   b. A silver colored Nyx Mobile cellular phone
   Model: xyn306
   IMEI: 352533092205354, described in Attachment A-2 (incorporated herein by reference);

   c. A silver LG G6 "Thinq" cellular phone with two stickers on the back reading "phone only 229" and "Activation 189", and bearing a SIM card with the numbers 8901260342917477525F, described in Attachment A-3 (incorporated herein by reference), (collectively **"Target Devices"**),

which were seized from Izamar Stephanie CHAVEZ ("CHAVEZ") on January 17, 2019 pursuant to her arrest for importation of federally controlled substances, in violation of Title 21, United States Code, Sections 952 and 960, at the San Ysidro Port of Entry in San Diego, California.

2. The **Target Devices** are currently stored as evidence in the Homeland Security Investigations (HSI) evidence vault located at 2255 Niels Bohr Court, San Diego, CA 92154.

3. I seek authority to search the **Target Devices** and to seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960, as described in Attachment B (incorporated herein by reference), for the time period October 17, 2018, up to and including January 18, 2019.

4. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachment B.

5. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The

1

evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates, times and amounts are approximate.

## EXPERIENCE AND TRAINING

6. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am also a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

7. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI), who is assigned to the San Ysidro office under the Special Agent in Charge in the San Diego office. I have been employed by HSI since 2016. As part of my daily duties as an HSI agent, I investigate criminal violations relating to narcotics smuggling. I have received training from the Federal Law Enforcement Training Center and other law enforcement agencies in the area of narcotics smuggling. I have participated in dozens of narcotics smuggling investigations. I am in routine contact with experts in the field of narcotics. Prior to my employment as a Special Agent with HSI, I was employed as a Deputy United States Marshal/Criminal Investigator with the United States Marshals Service (USMS) in the Southern District of California. Prior to my employment with USMS, I was employed as a Special Agent with the United States Diplomatic Security Service. I have been a sworn federal agent for 13 years. As a federal agent, I am authorized to investigate violations of United States laws and I am a law enforcement officer with the

authority to execute warrants issued under the authority of the United States. In preparation for this affidavit, I have discussed the facts of this case with other law enforcement agents/officers within HSI and other agencies.

8. Based on my experience and training, I am familiar with the methods utilized in narcotics-trafficking operations and the trafficking patterns employed by narcotics organizations. I have also spoken with agents, as well as other law enforcement officers, about their experiences and the results of their investigations and interviews. I have become knowledgeable of the methods and modes of narcotics operations and the language and patterns of narcotics abuse and trafficking. I have become familiar with the methods of operation typically used by narcotics traffickers.

9. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular telephones.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular/mobile telephones because they are able to

3

        actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c.     Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d.     Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e.     Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f.     Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

    g.     The use of cellular/mobile telephones by drug smugglers tends to generate evidence that is stored on the cellular/mobile telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

11.     Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular/mobile telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular/mobile telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

12.     Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones often contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack

space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience that searches of cellular/mobile telephones associated with narcotics smuggling investigations yield evidence:

    a. tending to identify attempts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the cellular/mobile telephone; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

13. On Thursday, January 17, 2019, at approximately 10:00 PM, Izamar Stephanie CHAVEZ, a United States Citizen, petitioned for entry into the United States at the San Ysidro, CA Port of Entry as the driver, sole occupant, and registered co-owner of a 2014 Nissan Sentra bearing California license plate 7DXR088. Upon inspection of the vehicle, United States Customs and Border Protection (CBP) Officers discovered 81 plastic wrapped packages containing 37.76 kg (83.25 lbs) of a substance that subsequently tested positive for methamphetamine hidden within non-factory compartments located within the center

console, quarter panels, rear bumper, and spare tire of the vehicle. Post-Miranda, CHAVEZ admitted to smuggling money south earlier that day, and stated that she believed her vehicle to be empty upon return to the United States.

14. On January 18, 2019, the Honorable Linda Lopez, United States Magistrate Judge, signed a complaint charging CHAVEZ with importation of a controlled substance, in violation of 21 U.S.C. §§ 952 and 960. CHAVEZ waived indictment, and was arraigned on an information on the same charge on February 14, 2019.

15. The **Target Devices** were discovered and seized by CBP incident to CHAVEZ's arrest, and CHAVEZ signed a consent to search the phones.[1] HSI assumed custody of the **Target Devices** on February 21, 2019.

16. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe that CHAVEZ likely used the **Target Devices** to coordinate the importation of federally controlled substances into the United States. In addition, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information may be stored in the memory of the **Target Devices** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of CHAVEZ, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**.

17. Finally, I also know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional training, education and experience, I have learned that this requires planning and coordination in the days,

---

[1] In an abundance of caution, the Government asks the Court not to consider information agents may or may not have seen during the examination of Defendant or any other individuals' phones in determining whether there is probable cause for the requested warrant.

6

weeks, and often months prior to the event. Given this, I request permission to search the **Target Devices** for items listed in Attachment B beginning on October 17, 2018, up to and including January 18, 2019.

//

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the **Target Devices** and subject it to analysis. All forensic analysis of the data contained within the **Target Devices**

7

and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within sixty (60) days, absent further application to this court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, there is probable cause to conclude that CHAVEZ used the **Target Devices** to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

22. Because the **Target Devices** were promptly seized during the investigation of CHAVEZ's smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by CHAVEZ continues to exist on the **Target Devices**. As stated above, I believe that the date range for this search is from October 17, 2018, up to and including January 18, 2019.

23. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

1  I swear the foregoing is true and correct to the best of my knowledge and belief.

                                                              Special Agent Lauritz Austensen
                                                              HSI Special Agent

Subscribed and sworn to before me this ___1st___ day of April, 2019.

Honorable Judge Andrew G. Schopler
United States Magistrate Judge

9

## ATTACHMENT A-3

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    A silver LG G6 "Thinq" cellular phone with two stickers on the back reading "phone only 229" and "Activation 189", and bearing a SIM card with the numbers 8901260342917477525F
Model: unknown
IMEI: unknown

The **Target Device** is currently stored at the Homeland Security Investigations (HSI) evidence vault located at 2255 Niels Bohr Court, San Diego, CA 92154.



Photographs of the black/dark grey LG G6 "Thinq" cellular telephone to be searched

# ATTACHMENT B-3
## ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data for the period of October 17, 2018, up to and including January 18, 2019.

a. tending to identify attempts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the cellular/mobile telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, §§ 952 and 960.